State *v.* Bailey.

---

THE STATE OF CONNECTICUT *vs.* HENRY G. BAILEY.

First Judicial District, Hartford, March Term, 1907.

BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

Upon a trial for murder in the first degree, the court, in explaining to the jury the meaning of "malice" as definitive of our common-law crime of murder, instructed them that the law presumed malice in the case of every unlawful homicide which was unattended by circumstances of mitigation or extenuation, and that such homicide was murder. *Held* that for the purpose indicated, this instruction stated the law with sufficient accuracy; while its repetition in another form, as applied to the specific facts before the jury, was plainly correct.

In charging the jury upon the presumption of innocence which attended the accused, the trial judge expressed the belief that in

State *v.* Bailey.

the questions asked while the jury were being selected the rule on this subject was incorrectly stated. *Held* that the remark, while perhaps unnecessary, was certainly harmless.

In respect to a claim of self-defense, the jury were instructed that the accused had no right to use greater force than was necessary to repel the alleged attack; and that if unnecessary force was used, it would be evidence of malice and might make the crime murder. *Held* that this instruction was correct.

After explaining correctly the law of self-defense, the trial court called the attention of the jury to the importance of the existence of an honest belief of danger on the part of the accused at the time he struck the decedent, and the necessity of the jury's so finding before such a defense could serve the accused or reduce the homicide from murder to manslaughter. *Held* that this furnished the prisoner no just cause of complaint.

In accordance with the general rule applicable to a defendant who relies upon some distinct ground of defense, the burden of proving that what appears from the evidence of the State to be murder was in reality a homicide committed by the accused in self-defense, rests upon him; that is, it casts upon him the duty of going forward with his evidence upon that subject, leaving the State to rebut.

In the present case the jury were instructed that the accused was obliged to prove his claim of self-defense by a "fair preponderance of evidence;" but that if, on the whole evidence in the case, including that relating to self-defense, a reasonable doubt of his guilt existed, it should be resolved in his favor and he should be acquitted. *Held* that whether the first part of this instruction, standing alone, would have been correct or· not, it was so far qualified by what immediately followed, that the instruction as a whole afforded the accused no ground of exception.

Evidence tending to prove that a large sum of money was in the decedent's possession, and was taken by the accused at the time of the killing, is relevant to the question of motive and also to the truth of the prisoner's story.

Argued March 5th—decided March 15th, 1907.

INDICTMENT for murder in the ·first degree, brought to the Superior Court in Middlesex County and tried to the jury before *George W. Wheeler, J.;* verdict and judgment of guilty, and appeal by the defendant. *No error.*

Upon the trial the State offered evidence to prove, and claimed to have proved, among other facts, the following : George H. Goodale, the deceased, had for some days prior to July 6th, 1906, lived· on a small farm in the western part of the town of Middletown. On the morning of that

day, about ten and a half o'clock, Goodale, and Bailey, the accused, were working together in a hay field on said farm in apparently friendly relations, Bailey appearing to be sober and Goodale to have been drinking. Between twelve and one o'clock on the afternoon of the same day, Goodale drove to the house of a neighbor to return a hay rake he had borrowed, and left in a few minutes, and so far as known was not thereafter seen alive except by the accused. Between one and two of the same afternoon, Bailey came out of the cellar of Goodale's house, went to the barn, and in a few minutes thereafter drove slowly down the highway with the horse and wagon of Goodale, and turned to the west on the road to Middlefield and Meriden, driving more rapidly. Three days after this, on the afternoon of Monday, July 9th, the lifeless body of Goodale was found reclining in a patent rocker in front of the south window of the sitting-room of his house. A soft felt hat rested far back on the back of his head, with the rim between the back of the rocker and the lower part of his head; his left leg, which had been weakened from an old fracture, was crossed over his right leg; his right hand and forearm rested naturally over the arm of the chair upon his lap, the left was hanging down by his side; his head was turned slightly to the back and right. There were no wounds, bruises or abrasions upon any part of his person except over the left eye, extending below the lower eyelid, about three inches in length and three quarters of an inch deep, and another over the right eye, about two inches long and one and one half inches deep. These wounds were made by some heavy, blunt instrument, such as the back of an axe. The blows had crushed in the underlying bones down to the brain substance more than an inch, and fractured in some part every bone in the skull except those on top of the head. The first blow must have produced immediate unconsciousness. Either blow was fatal, and death resulted in from five to twenty minutes. Goodale had recently moved into the house and there was considerable dirt on the floor; but there was no disarrangement of furniture, nor anything

about the person of Goodale, nor any marks on the floor, to indicate a struggle of any kind. A heavy axe was found standing against the wall of the sitting-room, and on its helve near the head was a splash of what appeared to be blood.

In the opinion of competent physicians Goodale was struck while reclining in the rocker, probably when asleep or dozing, first on the left side of the forehead and then on the right, which was the heavier blow, and never moved after the second blow, and died as a result of the blows in from five to twenty minutes. He had been dead from three to five days when discovered. When Goodale's body was discovered the house was found securely closed, the doors locked on the inside and the windows closed, and the only entrance to the house open was by way of the cellar, from which Bailey had been seen to leave the house on July 6th. Goodale's dog was found in the house guarding the dead body of his master, and refused to allow entrance to be made until he had been wounded by gunshot. Goodale had on his person shortly before July 6th a considerable sum of money, which had been seen by several persons, and this was in the shape of a roll of bills carried in an old shot bag in his trousers' pocket. When his body was discovered, the left-hand pocket was turned inside out and empty, and the right-hand pocket turned partly inside out; upon his lap lay an open pocketbook, and an old shot bag lay upon a chair near the door to the kitchen. No money was found on his person except some forty cents in the right pocket, and none about the house. An inventory of the articles found in the sitting-room and kitchen was made at the time, and included the axe, rocker, carving knife, and various other things.

When the accused left the house on July 6th he drove on the shortest road to the Meriden trolley, turned into a cart path leading to the crest of Meriden mountain, which was about half a mile from the end of the trolley line, and tied the horse to a tree. (The horse was found six days later. He had broken his fastening and gone along the

State v. Bailey.

cart path until the wagon became fast and the horse could not get away, and in that condition was found.)  The accused took the trolley to Meriden and there bought a complete new outfit of clothing, changed all his old clothes for the new, and left the former with the storekeeper, saying he would call for them later.  He then went by train to Springfield, thence to Albany, thence to Niagara Falls, and thence to St. Catharine's, Ontario, Canada, where he arrived Saturday morning, July 7th.  During the preceding day (the day of the murder) he appeared, to the various witnesses who had met him and seen him, to be sober. He was arrested in Canada about half after four o'clock on the morning of July 17th.  While in Canada he had spent a considerable sum of money, including $75 sent to his wife to bring her to Canada.  He had given a false name and made false statements as to his occupations and previous life.  He had greatly changed his appearance by shaving off his black mustache, and also wore glasses, which he had not done before.  On his arrest he had some $77 on his person.  At Meriden, and after his arrest, he had made false statements about himself.

The defendant offered evidence to prove, and claimed to have proved, the following facts :  The accused came to Goodale's house on June 29th preceding the killing, with two of Goodale's sons, Charles and Wesley, and that night and part of the next morning was spent in drinking ; during the night Goodale quarrelled with his sons, and at one time made an assault on Charles with a hammer, which the accused took from him and afterward threw into the bushes in an adjoining lot.  Charles left on June 30th, and on that day Goodale engaged Wesley and the accused to work for him haying.  Wesley worked until July 3d, when he left and the accused remained.  Charles and Wesley testified as to these facts.  In the opinion of Dr. Thomas, the blows could not have been made in the manner claimed by the physicians who had been produced by the State.  Much of the time after Wesley left on July 3d until the killing on July 6th was spent by Goodale and Bailey in drinking,

and on July 6th Bailey, by reason of intoxication, was incapable of committing murder in the first degree. Bailey struck Goodale with the axe in self-defense. These facts were supported by the testimony of Bailey, the accused. The evidence introduced by the defendant was confined to the witnesses above named.

The accused, in his testimony given in his own behalf, gave an account of the occurrences of July 6th, and in respect to the killing said that on the morning of that day he went into the house at Goodale's invitation for a drink; that Goodale asked him to wait there until he had returned a hay rake which he had borrowed; that he waited about an hour and a half; that after Goodale got back they each took a drink, Bailey sat down and they had a talk about his pay and about Goodale's driving him home, all of which is given in considerable detail. Goodale swore and raved, and walked to where there was a small bamboo cane, with which he made an unprovoked attack on Bailey, who was sitting in his chair, and struck him twice on the head. Bailey undertook to take the cane away from him. Goodale then went into the kitchen, picked up a carving knife and came in, saying, " Damn your soul, I'll kill you." Bailey threw an old rocker in front of him, and picked up an axe lying near and hit him; the first blow stopped him, and with the second he fell in a heap by the stove. Bailey picked him up and set him in the rocking-chair, then picked up the carving knife and put it on the stand, and put the axe on the stand or against the partition. He then became unconscious. When he came to he was lying on the floor. He got up, looked at Goodale, drank a tumbler full of gin, took the money out of the shot bag, and walked out. His next remembrance was finding himself in the woods, where he tied the horse and went to Meriden. Bailey said he knew Goodale meant to kill him, and struck him in self-defense, but not intentionally, not to kill him, or anything like that; and said, also, that he should judge that he himself was pretty nearly drunk at that time.

State *v.* Bailey.

Upon this evidence the defendant claimed (1) that the killing was in self-defense and justifiable; (2) that the circumstances of the killing were sufficient to reduce the offense to manslaughter; (3) that by reason of his intoxication he was incapable of the deliberation and premeditation essential to the crime of murder in the first degree. The State claimed that in view of the conceded facts, the testimony of Bailey in respect to self-defense and provocation was clearly false, and that he was guilty of murder in the first degree.

The charge of the court as to which the appeal assigns error was given upon this state of the evidence and these claims of the parties.

*Daniel J. Donahoe*, for the appellant (the accused).

*Frank D. Haines*, State's Attorney, and *M. Eugene Culver*, for the appellee (the State).

HAMERSLEY, J. The court did not err in refusing to charge the jury in the language of some of the defendant's requests to charge. There were six requests.* The first

---

* On the trial of the case the defendant requested the court to charge as follows: (1) In order to find the accused guilty beyond a reasonable doubt, the jury must find that the acts done can in no way be explained except upon the theory of the guilt of the prisoner. If any juror finds, upon all the facts proven, that there exists a question in his mind, based upon the evidence in the case, whether the prisoner is guilty, and proven so by the testimony of two witnesses or what is equivalent thereto, then there is such reasonable doubt as should prevent a verdict of murder in the first degree. (2) A man who is assaulted under such circumstances as to authorize a reasonable belief that the assault is made with a design to take his life, or inflict extreme bodily injury, will be justified, in both the civil and criminal law, if he kill or attempt to kill his assailant. (3) While intoxication is no defense or excuse for crime, yet where intent is a specific element of the crime, the fact of intoxication should be taken into consideration by the jury; and if they should find that by reason of the intoxication of the accused, they had a reasonable doubt whether he was able to form and entertain a purpose to kill, they should find him not guilty of the intent to kill. (4) In the words, "and malice aforethought," used in the indictment, the adjective "aforethought" qualifies malice, and not the intent to kill: hence the malice must have existed previ-

State *v.* Bailey.

relates to the meaning and effect of the law forbidding a conviction unless the jury are satisfied that the accused is guilty beyond a reasonable doubt. Upon this point the court charged the jury fully, correctly, and in substantial compliance with the request.[a] The third request relates

ously and must coöperate with the act producing death, in order to constitute murder. (5) If the jury should find that when the blow was struck by the accused, he believed that he was in danger of receiving great bodily injury from the deceased, he is entitled to an acquittal on the indictment; although he may have been guilty of another crime in taking the money afterwards. (6) If the jury should find from the evidence that the blow causing death was struck in the heat of passion, or in the cause of a sudden quarrel, the verdict cannot be greater than manslaughter; and any act afterwards done by the accused should not be considered by the jury in arriving at their conclusion.

[a] In reference to this request the court charged the jury as follows: In order to establish the guilt of the accused beyond a reasonable doubt, the proof ought to exclude every reasonable presumption or hypothesis of innocence in the mind of each juror, for proof beyond a reasonable doubt is such proof as excludes every reasonable hypothesis of innocence; and further, all the essential elements of the crime charged, or of the crime involved in the crime charged, ought to be established beyond a reasonable doubt. If the jury entertain a reasonable doubt between a greater and a lesser crime, the accused should have the benefit of the doubt, and the verdict should be for a lesser crime. In addition to the proof required to constitute murder in the first degree,—that is, proving the State's case beyond a reasonable doubt, our statute provides, "No person shall be convicted of any crime punishable by death without the testimony of at least two witnesses, or that which is equivalent thereto." By this statute the testimony of one witness swearing either directly or to circumstances, is not enough to convict of murder in the first degree. It must be the testimony of two witnesses, or that which is equivalent thereto. This does not mean that there must be two witnesses to every fact or circumstance constituting the crime. If there be two or more witnesses, each testifying to different parts of the same transaction, or to different circumstances attending it, and all concur to prove the crime alleged, this may be sufficient to warrant a conviction though there should not be two witnesses to any one fact. It must be the equivalent of two witnesses; and you are the judges whether the testimony be that of two witnesses or the equivalent thereto. You will observe, gentlemen, that this statutory requirement of two witnesses, or the equivalent thereto, has application solely to the crime of murder in the first degree. It has no relation to the crime of murder in the second degree. If you should find the crime charged to have been established beyond

State v. Bailey.

to the proof necessary to establish that deliberation and premeditation, in the perpetration of the offense, essential to bring a murder committed within the grade of murder in the first degree as defined by our statute. The charge of the court upon this point is adequate and correct.[b]

a reasonable doubt, but that the evidence is not that of two witnesses or the equivalent thereto, you ought not to find the accused guilty of murder in the first degree.

[b] In reference to this request the court charged the jury as follows: To constitute murder in the first degree the homicide must have been wilful,—that is, done intentionally and purposely, not accidentally; deliberate, not hastily or inconsiderately, but coolly; premeditated, done in pursuance of a previous intent. Such a killing is done with express malice. The length of time necessary to deliberate, or to form a specific intent to kill, need only be time enough to form a wilful, premeditated and specific intent to kill before the killing; and if there be such time, it is sufficient, no matter how long or how short it may be. All other kinds of murder, under our statute, are second degree; hence, all murder done with implied malice is of the second degree. One of the claims made in this case is that the accused was intoxicated at the time this homicide was committed; and if you should so find, this is the law surrounding that claim and to be applied by you. Drunkenness does not excuse a man for the commission of a crime. But a crime may require a certain degree of mental activity which a drunken man does not possess. To commit the crime of murder in the first degree, as charged in this indictment, the accused must have had mind enough to have formed a specific intent to kill, and to have killed wilfully—that is, designedly, deliberately—that is, in pursuance of previous intent to commit the crime. The accused must, in order to have a specific intent to kill, have had mind sufficient to have reasoned and understood the character of the act he was about to commit. If the accused, before the homicide and down to the time of it, had control of his faculties enough and had mental capacity enough to form a specific intent to kill the deceased and did so kill him, wilfully, deliberately and premeditately, and while comprehending the nature and character of the act, he had mind enough and capacity enough to commit the crime of murder in the first degree. If he had not such capacity, he could not commit the crime of murder in the first degree. So that in this case you are to determine whether the accused, before the homicide and down to the time of it, was in such a state of intoxication that he was unable to reason and form a specific intent to kill, and to have been unable to have killed wilfully, deliberately, and premeditatedly. If he was he could not commit the crime of murder in the first degree. Murder in the second degree does not require this activity of mind.

State *v.* Bailey.

The fourth request was complied with precisely as made. The second and fifth requests relate to the law of self-defense, and without qualification were inadequate. The charge on this point was substantially correct.[c] With ref-

---

[c] In reference to these requests the court charged the jury as follows: A man who in the lawful pursuit of his business is attacked by another under circumstances which denote an intention to take away his life, or do him some serious, enormous bodily harm, may lawfully kill the assailant, provided he use all the means in his power to save his own life, or to prevent the intended crime, such as retreating as far as he can, or disabling his adversary, if he can, if it be in his power. When the attack upon him is so sudden, fierce, and violent that a retreat would not diminish, but increase his danger, he may instantly kill his adversary without retreating at all. When from the nature of the attack there is a reasonable ground to believe there is a design to destroy his life, or commit any felony upon his person, the killing of the assailant will be excusable homicide, although it should after appear that no felony was intended. Before one kills another intending to take his life or do great bodily harm, he should do all he can to prevent the killing, retreating when he can, or disabling his adversary without killing him. If the attack is so sudden that retreat is impossible, he may instantly kill. When from the attack there was a reasonable ground to believe his life was in danger, or his person in danger of great bodily harm, he may kill his assailant, although in fact the assailant did not intend to take his life or do him great bodily harm. To sustain this principle in this case it must be found by the jury as a fact (1) that the accused had in fact at the time he gave the blow such reasonable belief; (2) that the situation as it was then presented to him authorized such reasonable belief; (3) and that he acted in consequence of such belief. *No greater force must be used than is necessary to repel the attack. The force used may not be unnecessary. If it is unnecessary, the force cannot be justified and such force if beyond proportion to the attack is evidence of malice, and may make the crime murder.* The reasonable belief under which the accused acted must have been his honest belief; and in judging of the reasonableness of belief the jury should put themselves in the accused's position at the time, and then judge from the standpoint presented to the accused at that time, taking all the circumstances as they then appeared. The danger may be real, or be honestly believed to be imminent. It is not limited to actual danger, threatening. The fact that a person has a deadly weapon, or even if he presents it, is no excuse for killing him, unless he manifestly intends to use it against the slayer; but where such an intention plainly appears it affords ground for reasonable belief of imminent danger, which would justify the killing. The general rule is that it is not justifiable to use a deadly

erence to the sixth request, relating to a crime of man-slaughter as distinguished from murder, the law was fully and correctly stated.[d]

weapon to repel words or blows of the fist, but whether the circumstances of an assault be sufficient to induce such belief is a question of fact,—and of that you are the judges. If the accused honestly believed he was in danger of his life, or of great bodily harm, he might, if he acted without malice, under such reasonable belief and there was reasonable ground for such belief, have given the blow or blows. If he gave the blows in malice, or if he had no such reasonable belief, or if the grounds were not sufficient to warrant such a belief, he would not be acting in self-defense, and hence his act would not be excused and he could not be acquitted because acting in self-defense. So you see if you find the accused acted in malice, or if he had no such honest belief, or there were no reasonable grounds to hold such a belief, his defense of self-defense fails. But if you should find that he acted not in malice, but under an honest belief, but the grounds upon which he acted were not such as would have induced such reasonable belief, the law says that the act, while not excusable, is not murder, but manslaughter. Therefore, if the self-defense fails because of insufficient ground for the accused to have had a reasonable belief, but in fact he does honestly believe it, the crime will be manslaughter and not murder. *You see how necessary it is that the accused honestly holds this belief when he gave the blows, and that you find that to be so in order to have it serve him in this defense, or in reducing the crime to manslaughter.*

[d] In reference to this request the court charged the jury as follows: The claim made in this case is, that if you should not find that this homicide occurred in the exercise of lawful self-defense, that the facts that you ought to find, so the defense claims, would establish that the crime committed, at the most, was manslaughter. And so I give you the general rules concerning that crime. The general rule is, wherever death ensues from a sudden transport of passion or heat of blood, if upon reasonable provocation and without malice, it will be manslaughter. If without such reasonable provocation, or the blood has had reasonable time or opportunity to cool, or there be evidence of malice, it will be murder. To reduce the crime from murder to manslaughter it must appear, not only that there was provocation, but that the fatal blow was given in consequence of such provocation and that that provocation was reasonable. If two men meet and quarrel suddenly, and one of them, smarting under the blow of the other, in a sudden heat of passion, without thought or reflection, seizes some instrument and kills that adversary, the law, taking into account the infirmities of human nature, the heat and passion arising from the provocation and the blow, reduces the crime from murder to manslaughter, provided the provocation was, under the circumstances,

State *v.* Bailey.

The real grievance óf the defendant, and the one mainly urged in argument, is not the denial of his requests to charge, but the errors alleged to have been committed in charging the jury in the language quoted from the charge as given and assigned as error. The court, in explaining the meaning of "malice" as definitive of our common-law crime of murder, said: "The law presumes malice in the case of every unlawful homicide unattended by circumstances of mitigation or extenuation . . . , and presumes that such homicide is murder." As these words were used in explanation of that "implied malice" or state of mind which includes some evil design in general, and which the law regards as existing in him who without justification and without any circumstances of mitigation or extenuation kills another, they state the law with sufficient accuracy; 4 Bl. Comm. 201; 2 Swift's Digest, 268; *State* v. *Marx*, 78 Conn. 18, 23, 60 Atl. 690; and the repetition of this language, in the application of the general proposition to the facts before the jury, is plainly correct. "If you find the accused unlawfully killed Goodale in the manner charged—that is, not in self-defense as claimed—and you find there were then present at the time of the killing no circumstances reducing the crime to manslaughter, the law presumes malice, and that the crime committed was murder."

The passage quoted from the charge as stating the law

reasonable. It is not any trivial provocation which in point of law amounts to an assault, or even a blow that will, of course, reduce the crime of the party killing to manslaughter. For where the punishment inflicted for a slight transgression of any sort is outrageous in its nature, either in the manner or continuance of it, and beyond all proportion to the offense, it is rather to be considered as the effect of a brutal and diabolical malignity than of human frailty. That is one of the true symptoms of what the law calls malice, and the crime will amount to murder notwithstanding such provocation, for barbarity will often make malice. If you find the accused unlawfully killed Goodale, that he did it without malice, in the heat of blood and in consequence of provocation, and that that provocation was reasonable, the crime committed would be manslaughter and your verdict should so state.

State *v.* Bailey.

in respect to the presumption of innocence is correct. Apparently it is assigned as error only for the purpose of criticising the remark of the court in which, after stating the principle, he expressed the belief that in some questions asked some of the jurors upon their examination while the jury was being impanelled the principle was stated incorrectly. The remark may have been unnecessary; it was certainly harmless. We find in the charge no ground for the claim that the court erred in the manner of presenting to the jury throughout the whole charge the question of the presumption of malice and the presumption of innocence.

There is no error in the portion of the charge relating to self-defense. The two passages referred to in the appeal as erroneous are plainly correct.*

After correctly explaining the law of self-defense, the trial judge added these words : " As to the burden of proof where self-defense is claimed, the law is that in every charge of murder the fact of the unlawful killing being first proved, all the circumstances of the necessity of self-defense are to be proved by the accused by a fair preponderance of proof, unless they arise out of the evidence produced against him. But if on the whole evidence, including the evidence of self-defense, a reasonable doubt is raised whether the charge or any charge involved therein is established, the doubt should be resolved in favor of the accused and he should be acquitted." The defendant assigns error in the first half of this paragraph. The paragraph is substantially a single sentence, and the court charged in the language of the first half only as a part of the whole sentence.

The defendant has no reason to complain of the charge thus given. It is elementary law that a party defendant to a judicial controversy of any kind, who relies upon some distinct ground of defense not necessarily connected with the transaction on which the charge against him is founded, assumes

---

* See italicized sentences in foot-note *c* on pp. 598, 599.

as to the fact constituting such defense the burden of proof, that is, he presents an issue upon which he goes forward with his evidence and the other side rebuts.   *State* v. *Schweitzer*, 57 Conn. 532, 539, 18 Atl. 787.   The trial court, after stating, in conformity with this principle, that all the circumstances of the necessity of the self-defense claimed by the defendant were to be proved by him, added that such proof was to be by a fair preponderance of evidence.   Whether such instructions, standing alone, would be in view of the situation disclosed by the record, a correct statement of the law, we need not consider; for they were immediately qualified by a clear statement of the duty of the jury to acquit if on the whole evidence, including that as to self-defense, a reasonable doubt were raised as to the defendant's guilt.   This, in effect, was to say that even if the evidence which the defendant produced did not suffice to establish by a preponderance of proof the necessity of self-defense, yet it must be considered by them in connection with all the other evidence, and was sufficient to require a verdict in his favor, if, when so considered, a reasonable doubt of his guilt should exist.

The skull of Goodale was admitted in evidence, and in connection with it duly authenticated photographs of the skull, taken before the brain substance had been removed, were admitted for the purpose of showing the condition of the skull and its interior, and the injury to the skull and brain.   There was no error in this.

Testimony by one witness that some three weeks before the killing Goodale drew from the bank $275, and by another witness that some two weeks before the killing he saw money in Goodale's possession, was admitted against the defendant's objection.   Subsequently the defendant testified that after killing Goodale he took a considerable sum of money that was in Goodale's possession and fled to Canada, as had been shown by the State's testimony.   Evidence tending to prove that a large sum of money was in Goodale's possession and was taken by the accused at the time of the killing, was relevant to the motive that induced

the killing; and, after the testimony of the defendant, became relevant also to the probability of truth in the story he had told.

The court did not err in calling the attention of the jury to the conflicting claims as to whether or not the cane the accused said Goodale used on him was found on the premises; nor in not calling the attention of the jury to the fact that the State had not adduced further testimony on rebuttal to show that no cane was found there.

The claim of the defendant that the charge as a whole was unfair and partial is contradicted by the record before us. The record shows that the accused had a fair and impartial trial, and that the result reached substantially turned upon the nature of the impression made upon the jury by his own testimony. In view of the conceded facts, of the whole story told by the accused, and of his manner of telling it, the jury have found by their verdict that his testimony, in connection with all the evidence produced, did not raise a reasonable doubt as to his guilt of the crime of murder in the first degree.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.